IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **MICHAEL GRANIERI,**<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**BRUCE BURNHAM, M.D., ET AL.,**<br><br>　　　　　Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:03CV771DAK |

　　　　This matter is before the court on Defendants' Motion for Summary Judgment and Motion to Strike.  The court held a hearing on the motion on August 1, 2006.  Plaintiff was represented by Budge W. Call, and Defendants were represented by William F. Hanson.  Having fully considered the motion, memoranda, affidavits, and exhibits submitted by the parties and the facts and law relevant to this motion, the court enters the following Memorandum Decision and Order.

BACKGROUND

　　　　This court previously described the events leading up to this lawsuit in its April 28, 2004 Memorandum Decision and Order.  Few facts have changed.  Plaintiff, Michael Granieri, was an inmate at the Central Utah Correction Facility ("CUCF") in Gunnison, Utah.  In March 2002, he began having severe abdominal pains, along with diarrhea and vomiting, and was seen by the

physicians, physicians assistants, and nursing staff at the facility's infirmary. Plaintiff's conditions continually worsened over the next six to eight weeks and he lost between twenty-five to thirty pounds before his condition was properly diagnosed. At one point, he was also prescribed a steroid-based medication that reportedly helped while he was taking it. However, after the medication was discontinued his symptoms returned.

On May 6, 2002, Plaintiff was transferred to the Draper facility and was treated at the facility's infirmary. Plaintiff felt something burst inside his stomach. He called to the staff for help and was told to "shut up and leave us alone." On May 8, 2002, Plaintiff was transported to the University of Utah Medical Center's emergency room. Upon arrival, Plaintiff was diagnosed with peritonitis and a working diagnosis of a ruptured appendix. Plaintiff underwent surgery the next day. Plaintiff's appendix was removed, twelve to eighteen inches of his intestines were removed, and a four inch section of his colon was removed. Plaintiff's diagnosis was Crohn's disease with secondary small bowel perforation. Plaintiff lost his distal ileum, which prevents him from absorbing bile salts and necessitates the need for cholestyramine, his terminal ileum will never "grow back," and he has chronic diarrhea which will cause some degree of disability.

Plaintiff was discharged from the University of Utah Medical Center on May 20, 2002 to the Utah State Prison and returned to the CUCF on May 28, 2002. Plaintiff was prescribed Chlorestyramine and Pentasa and told to eat a bland diet to help with the Crohn's disease. Plaintiff was also given literature about Crohn's disease and dietary information. When he returned to CUCF, the doctors substituted Sulfasalazine for the Pentasa, the information on Crohn's disease was taken away from him, and no special diet was allowed.

DISCUSSION

**Defendants' Motion for Summary Judgment**

This is Defendants' second motion for summary judgment. As in their first motion, Defendants argue that Plaintiff cannot establish an Eight Amendment claim for cruel and unusual punishment as a matter of law and, therefore, they are entitled to qualified immunity on his claims.

**A. Cruel and Unusual Punishment**

"When prison officials are deliberately indifferent to an inmate's serious medical needs, they violate the inmates right to be free from cruel and unusual punishment." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Therefore, to establish an Eighth Amendment claim, an inmate must show that his medical needs were serious and that prison officials were deliberately indifferent to those needs. *Id.*; *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (to prove a violation of the Eight Amendment for failure to provide medical care "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").

Defendants argue that this case is similar to case of *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006). In *Self*, the prison doctor misdiagnosed the inmates condition because the inmates symptoms were vague and nonspecific. When the doctor realized that further treatment was necessary, he sent the inmate to the hospital. The court found that the facts in that case did "not show a conscious disregard of Self's medical needs." *Id.* at 1234. The court explained that where a doctor "faces symptoms that could suggest either indigestion or stomach cancer, and the doctor mistakenly treats indigestion, the doctor's culpable state of mind is not established," and

"that "a treating physician's failure to connect-the-dots is by itself insufficient to establish a culpable state of mind." *Id.* at 1235-36.

This case, however, is not merely a misdiagnosis case. In *Self*, the doctor sent the inmate to the hospital for further treatment. In this case, defendants allowed Plaintiff's condition to worsen over the course of six to eight weeks before sending him to the hospital. Plaintiff may also have suffered from vague symptoms but the medical staff knew that it was gastrointestinal. Given their failure to diagnose the problem, the delay in sending Plaintiff to the hospital was significant. And, in some instances, Plaintiff was denied access to the nurses and doctors at the prison. He was also told that his ailments were only in his head even though, at times, his condition caused him to curl up in a fetal position or lose consciousness. The day before he was taken to the hospital, and six to eight weeks after the symptoms began, Doctor Roberts claimed that Plaintiff was guarded and factitious. There are substantial differences between this case and *Self*.

Nothing in the *Self* case causes this court to change its previous ruling. In addition, nothing in the additional affidavits warrant a reconsideration of the court's prior ruling. This court has already fully analyzed the issue of deliberate indifference and there remain questions of fact with respect to the issue. On summary judgment, this court must consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. Plaintiff has raised sufficient facts that would support a finding that Defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it and, therefore, that the issue of deliberate indifference should be presented to a jury. The court also finds that there are adequate affirmative links with each of the medical personnel who treated

Plaintiff for the case to go forward as to each of the Defendants.

### B. Qualified Immunity

Defendants further argue that this court did not fully analyze the issue of qualified immunity in its previous summary judgment ruling. Defendants now argue that the court did not consider whether the Defendants' actions were objectively reasonable conduct. Unlike the *Self* case, however, this court cannot conclude as a matter of law that Defendants' conduct was objectively reasonable. Qualified immunity cannot protect Defendants when there are questions of fact as to whether Defendants were deliberately indifferent to the serious medical needs of Plaintiff. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317 (10th Cir. 2002). Plaintiff has met his burden of presenting evidence sufficient for his case to go to a jury. Accordingly, Defendant's motion for summary judgment is denied.

Plaintiff's counsel requested that he be paid for his fees in responding to this subsequent motion for summary judgment. Although a court can modify a decision at any time before entering final judgment, Defendants' motion did not raise anything new. The court, therefore, agrees with Plaintiff that he should be compensated, at least in part, for the unnecessary expense in responding to Defendants' motion. Plaintiff's counsel shall submit his requested fees within ten days of the date this Order.

### Defendants' Motion to Strike

Defendants move to strike certain portions of the affidavits and declarations submitted by Plaintiff's in opposition to Defendants' first motion for summary judgment. These affidavits and declarations were filed in March of 2004. Defendants did not object to these affidavits in connection with the first motion for summary judgment. Therefore, the affidavits and

declarations could be considered by the court.

To the extent that Plaintiff is again relying upon these affidavits and declarations in his opposition to Defendants' second motion for summary judgment, Plaintiff asserts that they are already a part of the evidence in this case. Whether or not they are a part of the evidence in this case, the portions Defendants attack are either irrelevant to the court's decision or are established through other means. Therefore, the motion to strike is moot.

## CONCLUSION

Based on the above reasoning, Defendants' Motion for Summary Judgment is DENIED and Defendants' Motion to Strike is MOOT. Plaintiff's counsel shall submit his requested fees within ten days of the date this Order.

DATED this 9th day of August, 2006.

*[signature: Dale A. Kimball]*
DALE A. KIMBALL
United States District Judge